IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| WENDELL HARPER SMITH,<br><br>       Petitioner<br><br>   VS.<br><br>DON JARRIEL, Warden,<br><br>       Respondent | NO. 1:07-CV-10 (WLS)<br><br>PROCEEDINGS UNDER 28 U.S.C. §2254<br>BEFORE THE U.S. MAGISTRATE JUDGE |

## RECOMMENDATION

  Petitioner WENDELL HARPER SMITH was convicted in the Superior Court of Ben Hill County on June 25, 2003, on charges of malice murder, felony murder (false imprisonment), felony murder (aggravated assault), false imprisonment, aggravated assault, and concealing the death of another. He was sentenced to life imprisonment for malice murder and a consecutive ten year term for concealing the death of another. Petitioner's convictions and sentences were upheld on direct appeal on September 13, 2004. *Smith v. State*, 278 Ga.331, 602 S.E.2d 601 (Ga S. Ct. 2004).

  Petitioner Smith filed a state habeas corpus petition in Tattnall County Superior Court on March 29, 2005. Relief was denied in a final order dated January 23, 2006, and the Georgia Supreme Court on October 16, 2006 denied petitioner's application for a certificate of probable cause to appeal the denial. Petitioner filed this federal petition for habeas corpus relief on January 4, 2007, challenging his Ben Hill county convictions.

  This court is "bound under 28 U.S.C. § 2254(d) to afford factual findings of state [appellate] courts a presumption of correctness." *Towne v. Dugger*, 899 F.2d 1104, 1106 (11th Cir. 1990); *Paxton v. Jarvis*, 735 F.2d 1306, 1308 (11th Cir. 1984). The habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") thus retains the statutory presumption of correctness that is to be afforded state courts' factual findings. *Id.* Inasmuch as no dispute has been raised herein regarding the findings of fact issued by the Georgia Supreme Court, said findings are hereby adopted as follows.

> *Smith was involved in a relationship with the mother of the victim, Michael Johnson. After she told Smith that Johnson had not appeared in court in Coffee County and that she would be liable on his bond, Smith and his co-indictee Benway abducted Johnson from a residence in Jeff Davis County, purportedly to take him to authorities in Coffee County. According to Benway, who pled guilty and testified against Smith, when Johnson resisted, Smith rendered him unconscious by means of a choke-hold. During the trip to deliver Johnson to authorities in Coffee County, Johnson woke and resumed his struggle, but was beaten and choked to unconsciousness again. Smith later told Benway that Johnson was not breathing. Benway was unable to find a pulse or discern breathing, so the men decided to dispose of Johnson's body. They dumped Johnson into a well on property in Ben Hill County owned by one of Smith's relatives and threw debris, including bricks and cement blocks, into the well to hide the body. A medical examiner testified that the cause of death was the combination of a crushed larynx and a crushed chest, and that the most likely explanation for the trauma was the fall into the well and the impact of the debris thrown onto him.*

*Smith*, 278 Ga. at 331.

## STANDARD OF REVIEW

Under the AEDPA, a federal court's "review is greatly circumscribed and is highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  In interpreting this portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 120 S. Ct. 1495, 1519 (2000).

Moreover, the Court held that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 1522. An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 1520.  "In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 120 S. Ct. at 1520)).

Accordingly, the petitioner must first establish that the state habeas court's adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  In other words, as this is a post-AEDPA case, the petitioner herein may obtain federal habeas relief ***only*** if the challenged state court decision was either contrary to or an unreasonable application of Federal law as determined by the Supreme Court.  *Williams*, 120 S. Ct. at 1519. [1]

---

[1] The court notes that although the Eleventh Circuit set out a three-part inquiry for applying § 2254(d)(1) in *Neelley v. Nagle*, 138 F.3d 917 (11th Cir. 1998), the court recognized after the Supreme's Court decision in *Williams* that the "viability of [the third] aspect of *Neelley* is questionable".  *McIntyre v. Williams*, 216 F.3d 1254, 1257 (11th Cir. 2000).  Thus, the proper reasonableness inquiry is whether the lower court's decision was objectively reasonable. *Id.*

3

## INEFFECTIVE ASSISTANCE CLAIMS

In his original and amended petitions, petitioner Smith raises several grounds of alleged ineffective assistance of counsel, to-wit:  he alleges that trial counsel failed to investigate the medical records of the victim, failed to object to certain jury instructions, did not allow petitioner to testify, failed to *voir dire* Dr.  Anthony Clark, and failed to investigate and call essential witnesses.

The state habeas corpus court made the following findings of fact and conclusions of law in regard to petitioner's allegations of ineffectiveness against trial counsel.

> *Petitioner claims that he received ineffective assistance of trial counsel in that counsel failed to investigate the victim's medical history resulting from a car accident wherein the victim's rib cage was fractured; failed to "make timely and adequate objections" to the "alternative" jury instruction on aggravated assault that expanded the definition of the crimes as indicted by the grand jury; . . . would not allow Petitioner to testify at trial; failed to voir dire state's witness Dr. Anthony Clark as an expert witness in forensic pathology; and failed to interview and call "essential witnesses" .*
>
> *Mr. Hobby had been in practice for almost twenty years at the time of his representation of Petitioner and had handled prior murder cases.  He secured an investigator and a defense medical expert, interviewed Petitioner, his family members, and witnesses, met with petitioner frequently,  researched relevant law,  and prepared potential defenses, which they pursued by motions and at trial and through appeal.*

4

> *[In regard to petitioner's Ground 1,] Mr. Hobby explored this a bit with the state's expert, [but] the victim was no longer in a brace or receiving treatment at the time of [his death], and the evidence showed recent bleeding in the ribs, indicating that the fracture had just occurred and was not from months before. . . . [The defense expert stated] that the car accident injuries had no real bearing on and were not helpful to whether they were broken as a result of the incident with Petitioner which resulted in the victim's death. Petitioner has failed to establish either prong of ineffective assistance of counsel in Mr. Hobby's handling of this issue [of failing to investigate the medical records of the victim].*
>
> *. . . The aggravated assault charge did not expand Petitioner's crime beyond what was charged in the indictment, and the implied malice charge was not unconstitutionally burden-shifting. Petitioner has failed to establish ineffective assistance of counsel for Mr. Hobby not objecting to or raising these charges as error on appeal.*
>
> *Petitioner was aware that it was his decision whether to testify and he had been advised of such on the record by the trial court. Mr. Hobby and Petitioner discussed whether Petitioner should testify, including discussing that his co-defendant was testifying against him, that Petitioner had given a detailed, cooperative taped statement to police setting out his defense and position about what had happened and that this would likely be admitted, putting Petitioner's defense before the jury without him needing to testify and risk cross-examination. Petitioner reviewed his taped statement, and he never told Mr. Hobby that he wanted to testify, nor did he tell the court that he wanted to testify. Petitioner has failed to establish either prong of ineffective assistance of counsel in Mr. Hobby's handling of this issue.*

> *Mr. Hobby did not voir dire the state's forensic pathologist, as he discussed with Petitioner at the time, he felt it would only enhance the witness' credibility and reputation before the jury. Further, he knew the witness and his work with the GBI and had no objections to his testifying as an expert and knew of no benefit to be derived from a voir dire of him on his qualifications. This was certainly a reasonable trial strategy, and Petitioner has failed to establish either prong of ineffective assistance of counsel in Mr. Hobby's handling of this issue.*

> *Mr Hobby reviewed the state's discovery and talked to Dianne Evans. However, Mr. Hobby saw no reason to have Ms. Evans testify to prior difficulties between Petitioner's co-defendant and the victim because the co-defendant readily admitted them anyway. They handled the dispute between petitioner and his co-defendant as to who had choked the victim in the best way they could using the physical evidence. Nothing that Ms. Evans could have testified to would have further supported Petitioner's allegation that his co-defendant and not Petitioner had committed the choking of the victim or that Petitioner did not have a motive to kill the victim. The same was true for Candice Smith, and she could add nothing that the co-defendant did not already admit. Both witnesses were under defense subpoena, but Mr. Hobby made a strategy decision not to use them. Finally, while Mr. Hobby talked to Petitioner's sister, Rhonda Duncan, she ran and hid to avoid the defense subpoena, and the co-defendant in any event also admitted that he had told Ms. Duncan that he had killed the victim. The decision whether and what witnesses to call is the epitome of a trial strategy decision which is given great deference, and Petitioner has failed to establish either unreasonable performance or prejudice with regard to Mr. Hobby's decisions as to what witnesses to call.*

> *Petitioner has failed to establish either prong of his claims of ineffective assistance of counsel.  Mr.  Hobby's handling of Petitioner's trial was well within the constitutional parameters of reasonable performance, and Petitioner has failed to establish a reasonable probability of a different result but for alleged error of counsel.*

(Respondent's Exhibit 3, pp.  2-8).

In order to establish that his counsel's representation was constitutionally defective, the petitioner must show (1) that his counsel's representation was deficient, and (2) that the petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985).  The petitioner "must overcome the presumption, that, under the circumstances, the challenged action 'might be considered sound [trial] strategy'". *Strickland*, 466 U.S. at 688 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  "Our role in collaterally reviewing state judicial proceedings is not to point out counsel's errors, but only to determine whether counsel's performance in a given proceeding was so beneath prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989).  The two-prong *Strickland* test applies to guilty plea challenges, although the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The *Strickland* court

stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. The court's determination of prejudice to the petitioner must consider the totality of the evidence before the jury and ask if "the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696.

It does not appear, nor has petitioner shown, that the state habeas corpus court's decision in this matter was contrary to or an unreasonable application of federal law. The court cited to and relied on the principles governing ineffectiveness set forth in *Strickland v. Washington*, the clearly established law in this area, and determined that attorney Hobby provided the plaintiff with effective representation, based on testimony indicating that Hobby had adequately prepared for trial, and provided reasoned deliberation regarding the filing of motions and interposing of objections. Relying on the principles of *Strickland* and its incorporation into Georgia law, the court found that Hobby was not deficient and did not prejudice petitioner at trial. The facts as found by the state habeas court evidence Hobby's preparation for petitioner's representation, reviewing evidence in the possession of the prosecution, and objecting to the introduction of evidence and filing motions when appropriate. Therefore, this ground will not support the granting of habeas relief herein.

### SUFFICIENCY OF THE EVIDENCE

In grounds 6 and 8, the petitioner also alleges that the evidence was insufficient to support his convictions and that denial of his motion for a directed verdict was error. The Georgia Supreme Court found that "*the evidence . . . was sufficient to authorize a rational trier of fact to find Smith guilty beyond a reasonable doubt of the offenses for which he was convicted.*" *Smith*, 278 Ga. at

332. It does not appear, nor has petitioner shown, that the Georgia Supreme Court's decision in this matter was contrary to or an unreasonable application of federal law. The court cited to and relied on the principles governing sufficiency of the evidence set forth in *Jackson v. Virginia*. 443 U.S. 307 (1979), and viewed the evidence in the light most favorable to the verdict. The court concluded that a rational trier of fact could have found the petitioner guilty of the crimes charged beyond a reasonable doubt. The state court's conclusions regarding the sufficiency of the evidence reveal that its conclusions were neither contrary to nor an unreasonable application of clearly established Federal law. Thus, this court is prohibited from issuing habeas relief on the basis of the petitioner's challenges to the sufficiency of the evidence.

## REMAINING CLAIMS

In petitioner Smith's remaining claims for habeas corpus relief, presented in Grounds 7 and 9 of this federal petition, he alleges that the trial court abused its discretion in admitting certain photographs into evidence and attempts to reserve his right to amend this federal habeas petition. As the respondent argues, neither of these claims presents proper grounds for habeas corpus relief. Evidentiary errors in the admission of photographs, which are matters of state law, ordinarily will not support the granting of habeas relief. *Smith v. Newsome*, 876 F.2d 1461, 1468 (11th Cir. 1989). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). Additionally, petitioner's attempt to preserve a right to amend this federal habeas corpus petition is not itself properly considered as a ground for habeas corpus relief.

Inasmuch as the grounds for relief raised herein will not support the granting of habeas corpus relief, IT IS THE RECOMMENDATION of the undersigned that this petition be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, **WITHIN FOURTEEN (14) DAYS** of receipt thereof.

SO RECOMMENDED, this 12th day of APRIL, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE